CASE No. 1021.

ADICKES v. LOWRY.

1. Land in possession of a vendee under a valid contract to purchase, cannot be sold as the property of the vendor under judgments which did not obtain liens until after the contract was made.

2. *Quere:* If a debtor puts his land beyond the reach of his creditors by a contract which binds the vendee to apply the proceeds to the debts of the vendor, can the vendor rescind this contract without the consent of his creditors?

3. L., in possession of land under bond for titles given by B., became the purchaser of B.'s interest in this land at sale under execution, and paid in part his bid, but failing to pay balance, the land was re-sold by the sheriff as the property of B., and purchased by A. In action by A. against L for recovery of this land—*Held*, that L. was not estopped from claiming his rights under his contract with B.

4. Possession of land for four years and forbidding a sale, are sufficient to charge a purchaser with notice of claim to the land, and, no inquiry being made, of the nature of the claim.

5. Under a complaint which demands recovery of real property purchased at sheriff's sale, no judgment can be given for the unpaid balance of purchase money due at the date of the levy to the execution debtor under a contract by the defendant to purchase—the pleadings raising no issue as to the time when the purchase money was paid.

6. The judgments could acquire no lien upon the land which was in possession of the vendee under his contract to purchase, nor could the unpaid balance of the purchase money be reached, as, before notice of any claim thereto, it had been paid out by the vendee under his contract.

7. The vendee being bound to apply the purchase money to the individual debts of the vendor, the contract operated as an equitable assignment in favor of the vendor's separate creditors.

8. *Quere:* Would not separate creditors be entitled, in equity, to the separate assets of the debtor, and be preferred to creditors of a partnership of which the debtor was a member?

Before WALLACE, J., York, November, 1879.

Action for recovery of land commenced June 17th, 1876, by H. F. Adickes, William McGill and Thomas McGill, against John T. Lowry and Fenton Diggs. The case may be found

reported in 12 *S. C.* 97. At the second trial the defendant was allowed to amend his answer, so that it might set up the defence of possession since January, 1872, under a contract then made for the purchase of the land in dispute here.

To the case, as stated in the opinion, it is not necessary to add anything, except as follows: The receipts of Sheriff Glenn to J. T. Lowry, in December, 1873, were expressed to be " in part payment of J. R. Bratton's interest in a tract of land sold by me." William McGill testified that " Lowry told witness that he had paid, or would pay, $400, and come back in two weeks and he should have the last dollar of it." This witness was a plaintiff in one of the judgments against Allison & Bratton, and is also plaintiff here. Lowry testified that he might have said to McGill that he would get his money, as Allison had promised to pay $1000 on the judgments in the sheriff's office.

After the testimony was closed, the following special issues of fact were submitted to the jury, whose findings are given at the end of each question:

1. Was there a contract of purchase and sale of the land in dispute between J. R. Bratton and J. T. Lowry? Answer. Yes.

2. If there was a contract of purchase and sale, was there an agreement to rescind? Answer. Yes.

3. What amount of money was paid by J. T. Lowry for J. R. Bratton up to the sale of the land by the sheriff in 1873? Answer. $369. And what was the whole amount paid? Answer. $769.

4. What was the amount of the value of the yearly rent of the land? Answer. $40 per annum.

5. Was notice of claim to the land given by Lowry at the first sale in 1873? Answer. No.

The points raised by the exceptions, so far as they were considered by the court, are sufficiently stated in the opinion.

*Messrs. C. E. Spencer* and *J. S. R. Thomson,* for appellants.

*Messrs. J. F. Hart* and *G. J. Patterson,* contra.

April 11th, 1881.   The opinion of the court was delivered by

McIVER, A. J.   This was an action to recover possession of a
tract of land, the title to which was claimed by both parties,
through one J. R. Bratton, who was conceded to have been, at
one time, the legal owner.   The plaintiffs claimed as purchasers
at sheriff's sale under executions against Bratton, and the defend-
ant, Lowry, under a contract to purchase from Bratton, under
which he went into possession and paid a part of the purchase
money, prior to the time when the executions through which the
plaintiffs' claim were levied on the land in question, the balance
of the purchase money having been paid and a deed executed to
Lowry after those executions had been levied, but before the sale
by the sheriff.   These executions were issued to enforce judg-
ments obtained after the adoption of the code and prior to the
amendment giving judgments a lien on real estate before levy.

A brief statement of the facts of this case will be necessary to
a proper understanding of the questions arising under this appeal,
referring to the " case " as prepared for argument here, for a full
statement of the facts.

On October 15th, 1871, Bratton, being about to leave the
state, requested Lowry to collect such claims as were due to him,
pay his debts, amounting to some $1500, and, in the event of his
not collecting enough to pay his debts, to sell the land in con-
troversy.   He afterwards, in the month of November or De-
cember of that year, wrote to Lowry proposing that he should
take the land and pay the debts.   This offer was accepted by
Lowry, and, accordingly, on January 1st, 1872, he went into pos-
session and has ever since remained in possession, making con-
siderable improvements on the land.   In June, 1872, Lowry,
having paid a part, but not all of the debts, Bratton gave him a
bond to make titles when all the debts should be paid.   Subse-
quently, to wit, on April 30th, 1875, Bratton, having been fur-
nished with satisfactory evidence that the debts above referred to
had been taken up by Lowry, executed to him a deed for the
land.   It seems that Bratton, in addition to these debts, which
were his individual debts, was also liable as one of the firm of
Allison & Bratton, for the debts of that firm, but as he had seen
a statement, made out and certified by Allison, showing that the

partnership assets were more than sufficient to pay the partnership debts, he made no provision for them, and the arrangement with Lowry was made solely for the purpose of providing for his individual liabilities. Bratton also gave to Lowry on January 1st, 1872, a general power of attorney, which, among other things, provided that he should settle all claims against him in his individual capacity, but, doubtless for the reason above indicated, made no provision for his partnership liabilities. It turned out, however, that the partnership assets proved insufficient for the payment of the partnership debts, and various judgments were recovered against Allison & Bratton, among which are the judgments through which the plaintiffs claim, which were levied on the land in dispute in September and November, 1873. Under these levies the land was offered for sale in December, 1873, and bid off by Lowry at the sum of $1405. He, however, only paid $400 on his bid, and the land was resold by the sheriff in July, 1875, and bid off by the plaintiffs for $1000, who, having complied with the terms of sale, received a deed from the sheriff. It also appeared that at the time when the land was first offered for sale by the sheriff, Lowry had written to Bratton, asking him to release him from his agreement to purchase the land, on account of the proceedings against it by the sheriff. After the sale he got a letter from Bratton, saying : " If you will not carry out the contract, don't let the land be sacrificed." But there was no other evidence tending to show a rescission of the contract.

All the issues in the action were, by consent, referred to the judge for trial, who, being informed that there would be conflict in the testimony, empaneled a jury to aid him in his findings of fact, as in cases of chancery. Various issues of fact were submitted to the jury and their findings are set out in the "case." The Circuit judge held that there was a valid contract of purchase and possession under it by Lowry prior to the time when the executions through which the plaintiffs' claim were levied ; that this contract had never been rescinded, and that Lowry had thereby acquired such an interest in the land in question prior to any liens that could have attached to it as prevented it from being taken under executions against Bratton. He, therefore, dismissed the complaint. To this judgment various exceptions

were taken which we do not propose to consider in detail, inas-
much as we think that the real issue in this case lies within a
very narrow compass.

It is too clear for argument under the authority of *Massey* v.
*McIlwain,* 2 *Hill's Ch.* 421, which was recognized and affirmed
when this case was heard in this court before, (*Adickes* v. *Lowry,*
12 *S. C.* 97,) that if Lowry was in possession of the land under
a valid contract to purchase before the judgments through which
the plaintiffs' claim became a lien, the plaintiffs cannot recover the
land unless this contract had been rescinded prior to the time
when the sale under which the plaintiffs' claim was made, or
unless there is something in the case to estop Lowry from setting
up his equity.

The Circuit judge has determined, and we fully concur with
him, that there was no rescission of the contract.  The most that
can be said is, that there were negotiations looking to that end,
but the possession was not surrendered by Lowry, nor was that
part of the purchase money which had been paid, refunded.
But even were the evidence of rescission stronger, it would be a
very grave question whether the parties could rescind the con-
tract without the consent of the creditors of Bratton, for whose
benefit it was manifestly made.  If Bratton, by this contract, had
put this land beyond the reach of his creditors, with the declared
purpose of applying the proceeds of the sale to the payment of
his debts, and had contracted with the vendee so to apply the
purchase money, it might admit of serious question whether he
could, afterwards, without the consent of such creditors, annul
the contract which was really made for their benefit.

We will next inquire whether there is anything in the case
by which Lowry is estopped from setting up the defence relied
upon by him.  The fact that Lowry bid off the land at the first
sale by the sheriff cannot operate as such estoppel, for the plain-
tiffs, so far from being injured, were rather benefited by this act
of Lowry's, inasmuch as the amount paid by him on his bid was
applied to the reduction of the liens upon the property, to which
they looked for the payment of their debts.  It seems to us,
therefore, that aside from the fact testified to by Lowry, that he
bid off the land at the sale in 1873 under a mistaken idea that

he could not hold it under the bond for title, his bidding off the land at that sale cannot have the effect of estopping him from setting up his rights under the bond for title after he was better informed. So, too, as to the receipts taken from the sheriff on account of his bid, stating that the money paid was for Bratton's interest in the land. The sheriff can only sell the interest of the defendant in execution, and if the defendant has no interest then the purchaser takes nothing. It does not, by any means, follow that, because a person bids off at sheriff's sale property to which he has a claim, he thereby waives or abandons his previous claim. He may do this for the purpose of quieting his title and avoiding litigation, and in pursuit of this purpose he may, as in *Davis* v. *Hunt,* 2 *Bail.* 412, buy his own land and be compelled to pay for it.

Nor do we think that what occurred between Lowry and McGill, after the first sale, can operate as an estoppel; for it is susceptible of the explanation given by Lowry, and while it is true that there is conflict of testimony as to this matter, we certainly cannot base a judgment of reversal upon a fact about which there was a conflict of testimony. But in addition to this, McGill, though examined as a witness, does not pretend to say that he was induced by what had passed between himself and Lowry in 1873, to buy the land at the sale in 1875.

Neither can it be said that Lowry is estopped by his failure to give notice of his claim at the last sale, for the Circuit judge has found, as matter of fact, that " Lowry gave public notice of his purchase and claim," and while the evidence is somewhat conflicting as to what exactly occurred at the sale, we think we are bound to adopt the conclusion reached by the Circuit judge, as there certainly is evidence to sustain it. But in addition to this, Lowry's possession for more than four years was sufficient notice. Besides, Lowry forbid the sale, and this, as was held in *Reeves* v. *Sims,* 10 *S. C.* 308, was sufficient notice. Even if the fact be, as testified to by the sheriff, that Lowry claimed the land under his deed, and said nothing about the bond for titles, that does not negative notice to the purchaser that Lowry claimed the land. If it had appeared that the plaintiffs, upon receiving notice of this claim, which they were bound to inquire into, had

made inquiry, and Lowry had concealed from them the facts that he made a contract to purchase the land more than four years before, under which he had, ever since, retained possession, had received a bond for titles, and, having paid all of the purchase money, had obtained the deed which the sheriff says he exhibited to him, then the case would have presented a very different aspect. But there is not the slightest evidence that the purchasers made any inquiry at all, and they must take the consequences of their failure so to do ; for, in the absence of any evidence to the contrary, we are bound to assume that, if they had prosecuted such inquiry, they would have learned all these facts and saved themselves from buying property to which they could get no valid title. It is very clear, therefore, that the plaintiffs are not entitled to recover the land sued for.

It is contended, however, that if the plaintiffs cannot recover the land, they have an equity to subject, to the payment of their judgments, so much of the purchase money as remained unpaid at the time their executions were levied on the land, whereby, as they claim, they acquired a lien on the land.

The first difficulty which the plaintiffs must encounter in endeavoring to maintain this position is, that unless their pleadings are framed in such a way as to enable them to demand this kind of relief, they cannot obtain it. The complaint is not set out in the " case," but, from what is said of the nature of it, we infer that it is in the ordinary form of a complaint to recover possession of real estate, and that it does not state such facts as would be necessary to entitle the plaintiffs to a judgment that the unpaid portion of the purchase money should be subjected to the payment of their debts. For while it is true that a plaintiff is not confined to the particular relief demanded in his complaint, yet he can only obtain such relief as is appropriate to the case made by his pleadings and sustained by his proofs ; and if, as we understand the fact to be, the complaint in this case contains only the usual allegations of a complaint to recover possession of real estate, it does not state such facts as would entitle the plaintiff to a judgment subjecting the unpaid purchase money to the payment of their claims. Nor do we see how the defence set up by the answer can, in this respect, supplement the allegations of

the complaint; for the answer, as amended, sets up title in defendant under a deed dated prior to the sale under which plaintiffs claim, though subsequent to the levy of the executions under which such sale was made, which deed was, however, made in pursuance of a contract of sale and possession thereunder, prior in date to the levy of the executions. Whether the purchase money had been fully paid prior to the levy of the executions, does not appear from the pleadings, and no issue as to that fact is presented, either in the complaint or answer, or in both combined, and this, unquestionably, is an issue, the determination of which would be essential to this claim on the part of the plaintiffs.

But even if this difficulty were out of the way, it seems to us that the plaintiffs would encounter several obstacles to the successful maintenance of their position. The first obstacle is, that if there was a valid contract of sale by Bratton to Lowry, under which the latter went into possession and paid a part of the purchase money, the plaintiffs could not acquire a lien *upon the land* as against Lowry. All that they could do would be to assert their equity to subject the unpaid purchase money in the hands of Lowry to the satisfaction of their debts, or reach the unpaid purchase money in the hands of Lowry by proceedings supplementary to the execution, under the provisions of the code. But if Lowry, before notice of *such claim,* had paid over the purchase money to Bratton, or applied it according to his order to the payment of his debts, even this remedy of the plaintiffs would be lost. In this case there certainly was no evidence of any notice to Lowry of any such claim before he had paid over the purchase money, for the plaintiffs were making a totally different claim against Lowry—a claim for the land—and no claim of this kind seems ever to have been asserted by the plaintiffs until the case reached this court.

Another obstacle would be that, under the contract between Bratton and Lowry, the latter was bound to apply the purchase money to the payment of Bratton's individual debts, and that this operated as an equitable assignment in favor of that class of Bratton's creditors, and placed the purchase money beyond the reach of other creditors, is, we think, fully shown by the cases

cited by the counsel for the respondent. *Prime* v. *Yates*, 2 *Tr. Const. R.* 770; *Dargan* v. *Richardson, Cheves* 197; *Shubar* v. *Winding, Cheves* 218; *Tennant* v. *Stoney*, 1 *Rich. Eq.* 222; *Walker* v. *Arthur*, 9 *Rich. Eq.* 397.

But even if this were not so there would still remain the very important and interesting question, whether the separate creditors of Bratton would not have, in equity, a preference over the partnership creditors to the separate assets of Bratton. From what is said in the case of *Kulme* v. *Law*, 14 *Rich.* 26, this question seems yet open in this state, notwithstanding the decisions in *Wardlaw* v. *Gray, Dud. Eq.* 112; *Fleming* v. *Billings,* 9 *Rich. Eq.* 149; *Gadsden* v. *Carson*, 9 *Rich. Eq.* 257; *Wilson* v. *McConnell*, 9 *Rich. Eq.* 510; which, however, seem to have ignored the previous cases of *Woddrop* v. *Ward*, 3 *Desaus.* 203; *Sniffer* v. *Sass*, reported in a note to 14 *Rich.* 20.

But inasmuch as this question was not raised in the court below and has not been argued here, we do not propose to enter upon a consideration of it now, as it is not necessary to the decision of this case that it should now be determined.

The judgment of the Circuit Court is affirmed.

SIMPSON, C. J., and McGOWAN, A. J., concurred.